UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA                          :
:    Docket No.: 12-CR-301 (S-1) (ADS) (ARL)
-v-                                     :
:
DANIEL GREENBERG,                                 :
:
        Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DANIEL GREENBERG'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT BASED ON THE GOVERNMENT'S SPOLIATION OF EVIDENCE

CREIZMAN PLLC
Eric M. Creizman (EC-7684)
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com

June 28, 2013

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………………….1

ARGUMENT…………………………………………………………………………..1

I.   The Government Acted In Bad Faith In Failing To Preserve Classic's Computers………..1

   A.  Greenberg Did Not Have Possession Of Classic's Computers After The FTC Commenced Its Regulatory Action And The Government Knows It…………………....1

   B.  The Government Was Obligated To Preserve Classic's Computers…………………5

II.  Classic's Computers Contained Essential Exculpatory Evidence………………………….8

CONCLUSION………………………………………………………………...………9

Daniel Greenberg, by his attorneys, submits this reply memorandum of law in support of his motion to dismiss the Superseding Indictment (the "Indictment") based on the government's spoliation of evidence that is both material and necessary to his defense.

## PRELIMINARY STATEMENT

The government's 18-page memorandum in opposition to Daniel Greenberg's spoliation motion relies on unsworn and unsubstantiated factual assertions to blame the FTC and Greenberg—and deflect the Court's attention from the government's own responsibility—for the loss of, and failure to preserve evidence on Classic's computers and servers. The government, however, cannot escape the fact that the prosecution team—the U.S. Attorney's Office and the Postal Inspection Service—knew that evidence on Classic's computers was not preserved and yet allowed the computers to be destroyed. This, despite the government's obligation to preserve the computers through which the government asserts the alleged "fraudulent scheme largely was executed." Gov't Mem. at 2. In fact, as Greenberg can demonstrate to the Court through the limited data he managed to preserve on his own hard drive, the evidence on Classic's computers and servers was exculpatory.

If any criminal prosecution warrants dismissal on the basis of spoliation of evidence, the government's failure to preserve essential proof here warrants such dismissal.

## ARGUMENT

### I. The Government Acted In Bad Faith In Failing To Preserve Classic's Computers

#### A. Greenberg Did Not Have Possession Or Control Of Classic's Computers After The FTC Commenced Its Action And The Government Knows It

In an effort to wash its hands of all culpability in the destruction or loss of Classic's computers and servers, the government lays blame on the FTC, which it concedes flubbed the forensic imaging of Classic's computers, and on Greenberg, whom it alleges—for the

first time, and almost two years after Greenberg was arrested in this case—retained control and possession of Classic's computers. The government's outrageous and unfounded allegation that Greenberg maintained control over Classic's original computers and servers not only lacks any evidentiary or testimonial support, but also strains credulity.

To begin with, the government contends that Greenberg and Hazen (and its owner, Jonathan Bruk), which purchased ClassicCloseouts.com and occupied its former headquarters, were alter-egos. Thus, according to the government, after the FTC unsuccessfully attempted to make a forensic copy of Classic's computers and servers in June 2008, Greenberg continued to have control over the computers through Hazen and Bruk. The government offers no documentary evidence, no sworn affidavits, no deposition testimony—nothing at all—to support these bare assertions.

Instead, it relies on an "Interim Report" filed by the court-appointed temporary receiver, Angela Tese-Milner (the "Temporary Receiver"), in August 2009 (the "Interim Report"), two months after the FTC litigation commenced, that speculates that the sale of Classic Closeouts to Hazen and Bruk "*may* be a sham." Gov't Ex. 1 ¶ 1 (emphasis added). The government also relies on a footnote in the Interim Report in which the Temporary Receiver claims to have been "*informed* . . . that the FTC's computer specialist was denied access" to Classic's former headquarters to complete the forensic imaging job that he botched the previous day. *Id* at 5. No documentary proof or sworn testimony is provided to substantiate that hearsay.

Quite simply, the notion that the FTC was barred by Hazen and Bruk from attempting to re-image Classic's computers is both false and preposterous. Hazen and Bruk were named as defendants in the FTC's amended complaint filed less than a month

2

after the FTC's unsuccessful imaging of the computers.  *See FTC v. Classic Closeouts, LLC*, 2:09cv-2692 (LDW), Dkt#15.  It is inconceivable that Hazen and Bruk would destroy or tamper with Classic's computers while under the scrutiny of the FTC, and there is not a single, solitary allegation in the entire case docket even remotely suggesting that they did.

Furthermore, Hazen and Bruk were not in a position to destroy evidence because on September 15, 2009, the FTC obtained a consent restraining order requiring Hazen and Bruk to preserve all "assets, funds, documents, or other property," including Classic's computers.  Creizman Reply Decl., Ex. A at 8.  In addition, Hazen and Bruk were required to provide copies of all records or other documentation concerning the property within its custody or control, including Classic's computers.  *Id.* at 9.  They were also directed to "allow the FTC's representatives immediate access" to the premises, in order to "inspect and copy materials and data relevant to this action and to inventory the assets and documents" of Classic, including its computers.  *Id.* at 10.  Furthermore, they were specifically ordered to make available "computers, computer access codes and/or other computer passwords, computerized files, storage media (including, but not limited to, floppy disks, hard drives, cd-roms, zip disks, punch cards, magnetic tape, backup tapes, and computer chips."  *Id.* at 12.

The evidence that the government produced in discovery flatly belies its claim that Hazen and Bruk somehow maintained control over the computers and servers.  Indeed, the government in its opposition willfully ignores an email from the FTC's computer expert to the prosecution team in this case dated May 3, 2010—*which is discussed in Greenberg's opening memorandum*—evidencing the FTC's control of and access to Classic's computers and servers *after* Hazen and Bruk were evicted from Classic's former headquarters:

3

>Now to some important notes regarding the images:
>
>- There were *two* different forensic acquisitions. One at the defendant's premises and the other at a *storage facility where the machines were stored after the defendant's were evicted*.

Creizman Reply Decl. Ex. B at 3 (emphasis added).

Thus, it *cannot be clearer* that the FTC—and not Hazen, Bruk, or Greenberg—had control of or access to Classic's computers after August 2010 and after Hazen and Bruk were evicted from the premises. Those facts plainly do not square with the government's bare assertion—wholly devoid of any documentary or testimonial support—that: (i) in April 2010, Postal Inspector Schriver contacted Bennett Evictions, the contractor for the Nassau County Sheriff that removed and store Classic's property, to inquire about the computers; (ii) Bennett reported to Inspector Schriver that the computers had been removed from storage in January 2010; and (iii) *Greenberg* was the one who removed them. Gov't Mem. at 4, 15. The government repeats this scurrilous and baseless allegation in its brief, notwithstanding the absence of any *evidence*—not an affidavit by Inspector Schriver, no receipts from Bennett Evictions, *nothing at all*— supporting it.

The allegation is so absurd that it is unreasonable for the government itself to believe it. Were there any basis for it whatsoever, wouldn't Bennett have reported the removal of the computers to the FTC, which had a restraining order still in place preventing Greenberg, Hazen, or Bruk from taking possession of the computers? Furthermore, when alerted to Greenberg's purported removal of this patently vital evidence, wouldn't Inspector Schriver attempt to seize it from Greenberg? Or recommend that the government charge Greenberg with obstruction of justice? Or alert the FTC—which did not settle its litigation against Greenberg, Hazen, and Bruk until December 2010—to Greenberg's unlawful possession of the evidence?

4

The government's contention that Greenberg or his "cohorts" possessed the computers all along is patently ludicrous, and would be laughable—were Greenberg's liberty not at stake. Of course, it is at stake, and the government's failure to preserve exculpatory and essential evidence warrants dismissal of this case.

### B. The Government Was Obligated To Preserve Classic's Computers

Faced with the irrefutable fact that it allowed Classic's computers and servers to be destroyed, the government employs the straw man fallacy by falsely suggesting that Greenberg's spoliation motion is based on an assertion that the government "misle[]d[] the defendant into believing up until the eve of trial that the USAO had preserved the CCL computer evidence when in fact it was no longer available." Gov't Mem. at 1. The argument Greenberg advanced in his opening brief, however, which is untouched by the government's opposition, is that the government was aware that Classic's computers were not imaged properly and allowed the originals to be lost and destroyed. Nevertheless, even in attempting to defend its eve-of-trial disclosure that the computers had been destroyed, the government makes false, misleading, and unfounded assertions that ultimately collapse of their own weight.

As an initial matter, the government argues it had no duty to preserve Classic's computers because Greenberg "never indicated there was any need for the USAO to take action." Gov't Mem. at 15. The government, of course, can cite no case law that puts the onus on a *defendant* to tell the government that evidence must be preserved in order to obligate the government to "take action" to preserve it. In any event, Greenberg never had any reason to believe that the FTC or the prosecution team lost Classic's computers, or that they were never properly copied. To the contrary, given that the government has asserted

5

that the scheme was perpetrated through those very computers and servers, the logical assumption would be that it preserved them.

The government also argues that Greenberg has no right to complain about its late notice in disclosing that the FTC's data copies were deficient or that Classic's computers were lost because it notified defense counsel in its May 30, 2012 Rule 16 letter that the FTC's data copies were available through First Choice Copy. That assumes his then-attorneys told Greenberg about the availability of those data copies—the same lawyers who, in an April 2010 email to the then-lead AUSA, on which their own client Greenberg was not copied, and which Greenberg had never seen: (i) praised the AUSA for her "extraordinary" "generosity" after she revealed she would seek an indictment against Greenberg, (ii) emphasized that their "reputation and credibility with [the AUSA] is very important to us," in suggesting that they did not support Greenberg's 11th hour effort to persuade the government not to prosecute, and (iii) offered to provide "more color" about the circumstances of Greenberg's last ditch effort to resolve the potential charges against him through other counsel. Gov't Mem., Ex. 5 at 1. Those same lawyers, who the government also alleged had a "conflict of interest" in successfully attempting to have them disqualified from the case, now are the lawyers the government assumes notified Greenberg about the existence of the data copies.

The government's questionable assumption that Greenberg was aware of the existence of the data copies is even more suspect considering that the lawyer who was substituted to represent Greenberg, John Wallenstein, plainly was unaware that the data copies were available at First Choice. Indeed, in his letter application to the Court dated May 6, 2013, Wallenstein noted that "just recently the government provided the digital

6

images of the drives contained within the computers themselves." Creizman Reply Decl., Ex. C at 1. Thus, the notion that Greenberg knew or should have known of the existence of the data copies at First Choice is unfounded, much less that he knew or should have known they were utterly deficient.

The government also asserts that it never falsely represented to the defense that it had custody or control of the documents, and in fact informed Wallenstein that "it did not know the present whereabouts of the original CCL computers and servers as they were left by the FTC with the defendant and Bruk." Gov't Mem. at 10. That representation to the Court is belied by Wallenstein's May 6, 2013 letter in which he represents that "the physical computers are being held by the Federal Trade Commission in Washington, D.C." Creizman Reply Decl., Ex. C at 1. Indeed, where would Wallenstein get the idea that the computers were in Washington if the government had not made that representation to him, which Greenberg alleges in his declaration, dated June 12, 2013, he and his father witnessed? Why would Wallenstein ask this Court to "direct the government to immediately provide access to the physical computers, located in Washington at the Federal Trade Commission," or request more CJA funding to examine those computers, if he hadn't been told by the government that the computers were there? The government would like to pretend that Wallenstein "had a mistaken impression of the whereabouts of the original computers," (Gov't Mem. at 16), but it is clear that the government gave him that "mistaken impression."

The fact of the matter is, that while not critical to Greenberg's spoliation motion, the government *did not disclose* until virtually the eve of trial, after having no other choice, that: (i) Classic's computers were not under its custody and control; (ii) the computers were

7

in fact lost and destroyed; and (iii) the forensic images of the computers they did possess were woefully inadequate.

Under the circumstances, the government—the prosecution team in this case—acted in bad faith in failing to preserve Classic's computers and servers, as it was obligated to do.

## II. Classic's Computers Contained Essential Exculpatory Evidence

Despite never having examined Classic's computers and never having even bothered to preserve them, the government asserts in conclusory fashion that they did not contain exculpatory evidence. The government does not address Greenberg's sworn declaration in his opening brief that the computers and servers contained: (i) code written by Classic's computer programmers for the Frequent Shoppers Club promotional emails sent to customers; (ii) records of internal beta testing of the Frequent Shoppers Club program; (iii) the database used to generate invitations to customers to participate in the Frequent Shoppers Club program; (iv) the database server containing records of all "clicks" evidencing that customers clicked on the Frequent Shoppers Club link in order to become club members; (v) all promotional Frequent Shoppers Club emails that were sent to customers; (vi) customer service records, including internal emails, demonstrating the Company's efforts to refund customers who wished to cancel their memberships and get a refund; (vii) graphic design files showing which designs and files were associated with the Frequent Shoppers Club promotional emails; (viii) the web server showing which web sites were in use for Classic at all times relevant to the Indictment; (ix) inventory and shipping records showing that promotional free gifts were shipped to new Frequent Shoppers Club members; and (x) customer account pages, both from the point of view of the customers and from Classic's customer service employees, showing all charges, cancellations, and membership status.

8

Greenberg preserved a subset of this data on his own external hard drive and can show the Court, among other things: (i) the source code creating the graphics for the Frequent Shopper Club promotional emails and the graphics themselves; (ii) the email log file showing the approximately 650,000 email addresses to which the promotional emails were sent, and the source code used to facilitate the sending of these emails; (iii) the source code for the congratulatory email that was sent to new Frequent Shopper Club members; and (iv) screenshots for customer account pages for the customers who became members in the Frequent Shopper Club.  Thus, contrary to the government's empty claims, Greenberg can demonstrate that the original computers and servers contained substantial exculpatory data that is now unavailable to the defense for trial.

Accordingly, the Court should dismiss the Indictment because of the government's spoliation of evidence.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Indictment.

| | |
|---|---|
| New York, New York<br>June 28, 2013 | /S/ Eric M. Creizman_____<br>Eric M. Creizman (EC 7684)<br><br>CREIZMAN PLLC<br>565 Fifth Avenue, Fl. 7<br>New York, New York 10017<br>Tel.:  (212) 972-0200<br>Fax:  (646) 200-5022<br>Email: ecreiz@creizmanllc.com<br><br>*Attorneys for Daniel Greenberg* |

9