UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x:
UNITED STATES OF AMERICA            :
                                    :       Docket No.: 12-CR-301 (S-1) (ADS) (ARL)
        -v-                         :
                                    :
DANIEL GREENBERG                    :
        Defendant.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# MEMORANDUM OF LAW IN SUPPORT OF DANIEL GREENBERG'S FIRST MOTION IN LIMINE

CREIZMAN PLLC
Eric M. Creizman (EC-7684)
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com

January 5, 2013

**TABLE OF CONTENTS**

                                                                           **Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................1

      I.   The Government Should Be Precluded From Calling Two Witnesses To Testify Via Live Video Feed........................................................................................1

          A.   The Government Has Not Demonstrated Exceptional Circumstances That Necessitate Video Testimony........................................................................2

          B.   If The Court Does Not Preclude The Video Testimony, It Should Impose Certain Restrictions On Testimony ...............................................................4

      II.   Defense Counsel Should Be Permitted To Cross-Examine Witnesses Concerning Their Filing False Tax Returns Or Failure To File Taxes ................................4

      III.   Defense Counsel Should Be Permitted To Cross-Examine A Witness Concerning The Nature And Extent Of His Awareness That His Spouse Made A Fraudulent Application For Federal Government Benefits ..................................................5

      IV.   Defense Counsel Should Be Permitted To Cross-Examine A Witness About Information She Withheld From The Government ...............................................5

      V.   The Government Should Not Use Prejudicial Terms When Referring To The Allegedly Unauthorized Charges To Classic Closeouts' Customers' Credit Cards............6

      CONCLUSION .................................................................................................7

# PRELIMINARY STATEMENT

Daniel Greenberg, by his attorneys, submits this memorandum of law in support of his motion first motion *in limine*, requesting that the Court: (i) preclude two witnesses from testifying via live video feed at trial; (ii) allow cross-examination of witnesses concerning their filing of false tax returns or failure to file tax returns; (iii) allow cross-examination of a witness concerning his knowledge that his spouse understated household income in applying for federal government benefits; (iv) allow cross-examination of a witness concerning her withholding information of prior use of illegal substances in her interviews with the government; and (v) preclude the government from using unfairly prejudicial terms concerning the alleged unauthorized charges to customers' credit cards.

# ARGUMENT

## I. The Government Should Be Precluded From Calling Two Witnesses To Testify Via Live Video Feed

The government plans to call two witnesses to testify via live video feed at trial on the asserted, but unsubstantiated, basis that they are unable to travel due to illness. (At the request of the government, we are not disclosing the witnesses' names in public filings to maintain their privacy.) Witness A, who lives in California, was the CEO of a website that had dealings with Classic Closeouts. Witness A is being called to testify about contemporaneous communications between him and Greenberg in which he raised concerns about the volume of customer complaints his business was receiving concerning alleged unauthorized charges by Classic Closeouts. The government will likely attempt to use Greenberg's alleged statements (which the government will allege were false) as damaging admissions by Greenberg. The defense expects to conduct a substantial cross-examination of this witness. The government has advised that

Witness A will testify over live video feed either from a courthouse or the local United States Attorney's Office.

Witness B, who lives in Georgia, is a prior customer of Classic Closeouts whose credit card was charged by Classic Closeouts allegedly without her permission. She allegedly suffers from a back injury that allegedly prevents her from travelling.

### A. The Government Has Not Demonstrated Exceptional Circumstances That Necessitate Video Testimony

The Confrontation Clause of the Sixth Amendment "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). In the Second Circuit, live two-way video testimony may satisfy a defendant's right to face-to-face confrontation with witnesses only "[u]pon a finding of exceptional circumstances" and if it "furthers the interest of justice." *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (employing the standard under Fed. R. Crim. P. 15 for permitting depositions instead of live testimony). "Exceptional circumstances" required to justify live video testimony generally are present if "that witness's testimony is material to the case and if the witness is unavailable to appear at trial." *Id.* (comparing to standard under Fed. R. Crim. P. 15). The Second Circuit admonishes that "[c]losed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness." Under the circumstances here, neither witness should be permitted to testify by live video feed.

First, and most basically, the government has failed to present any proof that either witness is unable to travel as a result of his or her illness. By contrast, in *Gigante*, live video testimony was permitted only after the district court's finding, "by clear and convincing proof," including "[m]edical reports and testimony," that the witness could not appear in court. *Id.* at 79-80; *United States v. Gigante*, 971 F. Supp. 755, 756 (E.D.N.Y. 1997). Because the

2

government has not offered any evidence whatsoever—let alone come close to the standard suggested in *Gigante*—that Witness A's condition and chemotherapy treatment make it medically unsafe for him to travel, the Court should preclude his testimony by video feed. *Gigante*, 166 F.3d at 79. Similarly, because the government has not offered any evidence that Witness B's back injury makes it medically unsafe for her to travel, the Court should preclude her testimony by video feed. Greenberg's Sixth Amendment right confront his accusers require the government to make at least *some* showing of unavailability for each of the witnesses whom it proposes should be permitted to testify by video.

Second, the Court should preclude the live video testimony because the government has not established in any way that the witnesses' testimony is so material to the case that only live video testimony will "further the interests of justice." *Gigante*, 166 F.3d at 81. The relevant communications and documentary evidence between Greenberg and Witness A that the government seeks to admit into evidence can be brought through another witness. Specifically, the general counsel of Witness A's company is explicitly copied on all relevant communications between Witness A and Greenberg. The government does not contend that the general counsel of Witness A's company is in any way unavailable for trial.

The government also cannot argue that of the tens of thousands of people whose credit or debit cards Greenberg allegedly caused to be charged, Witness B, an out-of-state resident, suffering from a debilitating condition, must be called as a witness—especially given the fact that the government intends to call at least five other alleged victims as live witnesses at trial. The government should be required to demonstrate why the interests of justice require Witness B's testimony by video, and thus compromise Greenberg's right to confront witnesses.

Accordingly, the Court should preclude the testimony of Witness A and Witness B by live video feed.

### B. If The Court Does Not Preclude The Video Testimony, It Should Impose Certain Restrictions On Testimony

If the Court denies our motion to preclude the live video testimony of Witnesses A and B, it should impose certain restrictions to minimize the prejudice to Greenberg, including: (i) no discussion of the witness's particular medical condition; (ii) an instruction the witness is appearing by video because he or she is otherwise unavailable to testify in court, without stating the reason why the witness is unavailable; and (iii) the witness should testify from a neutral location, such as a courthouse, and not the U.S. Attorney's Office.

## II. Defense Counsel Should Be Permitted To Cross-Examine Witnesses Concerning Their Filing False Tax Returns Or Failure To File Taxes

Several of the witnesses the government intends to call at trial underreported their income tax or failed to file income tax returns. The government seeks to preclude the defense from cross-examining those witnesses on this subject even though such cross-examination traditionally has been permitted in this Circuit under Fed. R. Evid. 608(b) because it bears on a witness's credibility. *See, e.g.*, *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 553 (E.D.N.Y. 2011) ("[C]ourts in this Circuit have consistently permitted cross-examination regarding a witness's failure to pay income taxes pursuant to Rule 608(b)."); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 208 (E.D.N.Y. 1996) ("Controlling case law dictates that such conduct bears directly on a plaintiff's propensity for truthfulness and must be admitted for impeachment purposes if plaintiff takes the stand."); *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 681 (S.D.N.Y. 2001) ("Plaintiff's testimony in the case at bar will be extraordinarily important, and evidence of her failure to pay taxes is admissible. It bears directly on her propensity for

truthfulness, and will be admitted for impeachment purposes."); *Edwards v. City of New York*, 2011 W.L. 2748665, *4 (E.D.N.Y. July 13, 2011) (permitting defense counsel to ask plaintiff about his failure to file tax returns on cross-examination under Fed.R.Evid. 608(b)).

Accordingly, the Court should permit defense counsel to cross-examine witnesses about underreporting income on tax returns they filed or their failure to file tax returns altogether. *See, e.g., Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993) (Because "[e]vidence that a witness has made false statements in a tax return is obviously a matter which affects the witness's credibility," the "total failure to file tax returns . . . should be similarly admissible on the issue of [plaintiff's] truthfulness.").

### III. Defense Counsel Should Be Permitted To Cross-Examine A Witness Concerning The Nature And Extent Of His Awareness That His Spouse Made A Fraudulent Application For Federal Government Benefits

The government has disclosed that the spouse of one of its witnesses intentionally under-reported the witness's income on an application for services and benefits from the federal government's Head Start Program. The government also disclosed that the witness was aware of this fact. Defense counsel should be permitted to cross-examine the witness as to when he became "aware" of the fraudulent filing, what he did about it, and whether he and his family have accepted benefits from the federal government based on his spouse's fraudulent statements. Like the issue of income tax returns discussed in Section II above, this subject is probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608(b).

### IV. Defense Counsel Should Be Permitted To Cross-Examine A Witness About Information She Withheld From The Government

The government previously sought to prohibit defense counsel from cross-examining a witness about her prior use of illegal substances. At the conference on pretrial motions held on November 1, 2013, defense counsel disclaimed any intention to bring up the witness's prior drug

use to establish her prior drug use, but, rather, to establish that she withheld this information from the government. Ex. A (11/1/13 Tr. at 18). Specifically, the witness apparently disclosed to the government that she smoked marijuana in college, but did not disclose more recent drug use about which defense counsel had information.

In response, the Court asked government counsel, "Well, why can't they bring up the witness withheld information from the government, Mr. Norkin?" The attorney for the government said:

> Your Honor, the order doesn't dispute. If that's the case, they can bring it up. However, what they are not allowed to do is to have a fishing expedition of the witness in front of the jury. If there is proof that the . . . witness withheld information from the government, we are open to hearing that but we ask the defendant to provide it.

*Id.* at 19. The Court responded, "[s]o you can bring that out." *Id. But see, id.* at 22 (suggesting that the Court reconsidered its decision to admit such testimony).

Since the November 1 conference, defense counsel revealed to the government information he had about the drug use that the witness omitted in her interviews with the government. Based on 3500 material recently produced by the government, it is apparent that the government questioned the witness about defense counsel's information and she admitted that she had not told the government about her more recent drug use. Because this issue goes to her credibility, defense counsel should be permitted to cross-examine her about the fact that she did not reveal her more recent drug use to the government.

**V.    The Government Should Not Use Prejudicial Terms When Referring To The Allegedly Unauthorized Charges To Classic Closeouts' Customers' Credit Cards**

In motion papers, the government has referred to allegedly unauthorized charges on credit cards of Classic Closeouts' customers as "fraudulent" and "unlawful." (Dkt#75 at 5, 10). While defense counsel does not at all criticize the government's use of those terms in motion

practice, we request that in examining witnesses at trial, the government refrain from referring to the allegedly unauthorized charges as "fraudulent" or "unlawful." Those terms unfairly prejudice Greenberg before the jury because the government is required to *prove* to the jury beyond a reasonable doubt that the charges were fraudulent and unlawful. They should not simply be able to say the charges were fraudulent and unlawful.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court:

(i) preclude witnesses A and B from testifying via live video feed at trial;

(ii) allow cross-examination of witnesses concerning the witness's: (1) filing of false tax returns; (2) failure to file tax returns; (3) awareness of his spouse's fraudulent application for government benefits; (4) failure to disclose prior use of illegal substances in her interviews with the government; and

(iii) preclude the government from using unfairly prejudicial terms concerning the alleged unauthorized charges to customers' credit cards.

Dated: New York, New York
      January 5, 2014

/s/ Eric M. Creizman
    Eric M. Creizman (EC 7684)
Creizman PLLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com

*Attorneys for Daniel Greenberg*