```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                 :
UNITED STATES OF AMERICA                                         :
                                                                 :   Docket No.: 12-CR-301 (ADS)
        -v-                                                      :
                                                                 :
DANIEL GREENBERG,                                                :
                                                                 :
              Defendant.                                         :
                                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

# MEMORANDUM OF LAW IN SUPPORT OF
# DANIEL GREENBERG'S MOTION FOR BAIL PENDING APPEAL

Eric M. Creizman (EC-7684)
CREIZMAN PLLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com

*Attorneys for Daniel Greenberg*

## TABLE OF CONTENTS

                                                                                                        **Page**

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I. MR. GREENBERG EASILY SATISFIES ALL REQUIREMENTS FOR BAIL PENDING APPEAL .................................................................................................................. 2

A. MR. GREENBERG IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY                                    3

B. MR. GREENBERG'S APPEAL IS TAKEN FOR LEGITIMATE REASONS AND RAISES SEVERAL SUBSTANTIAL QUESTIONS OF LAW                            4

    1. The Court should have dismissed the Superseding Indictment based on the government's spoliation of evidence..................................................................................... 5

    2. The Court should have dismissed the wire fraud counts of the Superseding Indictment on the grounds that they do not plead a cognizable scheme to defraud under the federal wire fraud statute. ...................................................................................................... 6

    3. Trial errors deprived Mr. Greenberg of a fair trial. ........................................................... 7

        a. The Court erroneously admitted improper opinion testimony by a lay witness that was materially and unfairly prejudicial. …………………………………………………..8

        b. The prosecutor's comments in summation were improper and caused Greenberg substantial prejudice……………………………………………………………………10

    4. The Government Failed To Present Sufficient Evidence To The Jury To Permit a Finding Of Guilt Beyond A Reasonable Doubt And, Accordingly, Warrants Reversal Of Mr. Greenberg's Conviction ................................................................................................. 12

CONCLUSION .................................................................................................................... 12

Daniel Greenberg, by his attorneys, and pursuant to 18 U.S.C. § 3143(b), submits this memorandum of law in support of his motion for bail pending appeal.

**FACTUAL BACKGROUND**

Daniel Greenberg was arrested on a criminal complaint on or about September 1, 2011, upon returning from an overseas business trip. He was released from custody at the MDC Brooklyn on October 12, 2011 on a $1,000,000 personal recognizance bond secured by residential property, co-signed by five financially responsible sureties, and with travel restricted to New York City and Long Island. The relatively high bond amount, the need for security, and the travel restrictions were conditions imposed based on Mr. Greenberg's substantial business travel overseas. No one contended that Mr. Greenberg posed any danger to the community, and no one contested that all of his close family members, including his four young children, lived in the New York Metropolitan Area.

A grand jury returned an indictment against Mr. Greenberg on April 26, 2012 alleging two counts of wire fraud and one count of access device fraud, and about six months later, on November 5, 2012, returned a superseding indictment which included eight counts of wire fraud in violation of 18 U.S.C. § 3143, one count of access device fraud in violation of 18 U.S.C. § 1029, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A, and three counts of engaging in unlawful monetary transactions in violation of 18 U.S.C. § 1957. On January 24, 2014, Mr. Greenberg was found guilty by a jury on all 13 counts of the Superseding Indictment. Immediately following the jury verdict, the Court continued Mr. Greenberg on release with the added conditions of home detention with electronic monitoring, and a curfew of 9 p.m. to 6 a.m. On May 6, 2014, the Court granted Mr. Greenberg's request to modify the conditions of his pre-sentence release to shorten his curfew to 12 a.m. to 6 a.m., and to expand his travel limits to include the entirety of the Southern District of New York.

On October 31, 2014, the Court imposed sentence of 60 months of imprisonment on Count 1 (wire fraud) to run concurrently with Counts 2-8 (wire fraud), 9 (access device fraud), and 11-13 (unlawful monetary transactions), and 24 months on Count 10 (aggravated identity theft), to run consecutive to the sentence imposed on Counts 1-9 and 11-13, for a total of 84 months imprisonment. The Court also entered an order of restitution in the amount of $1,125,022.58 and an order of forfeiture in the amount of $1,125,022.58. The Court ordered that Mr. Greenberg be permitted to be released on the conditions of bail that were imposed immediately following the verdict, and that he self-surrender on November 17, 2014, to the institution designated by the Bureau of Prisons, or if no institution has been designated by that date, to the U.S. Marshals Service at the United States Courthouse for the Eastern District of New York in Central Islip.

The Judgment in a Criminal Case was entered on November 3, 2014. On November 7, 2014, Mr. Greenberg filed a notice of appeal from the conviction and sentence. For the over three years he has been on release, Mr. Greenberg has fully complied with all of his release conditions, without a single infraction.

## ARGUMENT

### I. MR. GREENBERG EASILY SATISFIES ALL REQUIREMENTS FOR BAIL PENDING APPEAL

The Court "*shall order* the release" of a defendant if it makes a finding: (i) by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community; and (ii) that the appeal is not taken for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for new trial. *See* 18 U.S.C. § 3143(b)(2). As Mr. Greenberg has demonstrated by clear and convincing evidence, he is neither a flight risk nor a danger to the community. *See* 18 U.S.C. § 3143(b)(A). Furthermore, as set forth below, Mr.

Greenberg raises colorable issues on appeal that, if successful, would likely result in a reversal of his conviction or a new trial. *See* 18 U.S.C. § 3143(b)(B).

### A. MR. GREENBERG IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY

Mr. Greenberg has been on release for over three years since his arrest. Each time this Court has had occasion to determine whether Mr. Greenberg should remain on release, the Court has concluded that he should. Given Mr. Greenberg's perfect compliance with the terms of his release, the Court plainly has effectively set a combination of conditions that has assured Mr. Greenberg's appearance, and Mr. Greenberg has faithfully executed his bail obligations by fully complying with requests of Pretrial Services and attending all designated court appearances. Mr. Greenberg has demonstrated his commitment to his obligations to the Court and the justice system and to seeing his case adjudicated through its conclusion. The body of evidence developed over the past three years since his arrest clearly and convincingly demonstrates that Mr. Greenberg presents no risk of flight.

All of Mr. Greenberg's ties are in the New York Metropolitan area, including his four children, ages 4, 9, 13, and 16, his parents, his brother and sister-in-law, and his nieces and nephews. Mr. Greenberg has been employed for over a year at Weatherguard Marbleoid Ltd., located in Bronx, New York, and has a close relationship with the owner of that business, who attended every day of trial.

Mr. Greenberg also does not pose any danger whatsoever to the community. He is a first-time, non-violent offender who had never encountered the criminal justice system until he reached his late 30s. Now 41 years old, Mr. Greenberg has not been alleged of any wrongdoing for the six years since the alleged offense conduct at issue in this case, which principally occurred over a three-month period between June and August 2008.

3

### B. MR. GREENBERG'S APPEAL IS TAKEN FOR LEGITIMATE REASONS AND RAISES SEVERAL SUBSTANTIAL QUESTIONS OF LAW

Mr. Greenberg raises substantial issues that demonstrate his appeal is taken for legitimate reasons, and not for purposes of delay. *See* 18 U.S.C. § 3143(b)(B). For the purposes of bail pending appeal, a "substantial question of law or fact" does not require that the district court "find that the issue will ultimately succeed or that it has merit." *United States v. Rittweger*, No. 2-CR-122(JGK), 2005 WL 3200901, at *4 (S.D.N.Y. Nov. 30, 2005). Nor is release pending appeal conditioned "upon a district court's finding that its own judgment is likely to be reversed on appeal." *Id.* Rather, a substantial question is merely one "of more substance than would be necessary to a finding that it was not frivolous…It is a close question or one that very well could be decided the other way." *See United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). Indeed, to grant bail pending appeal, "[a]ll that a district court need do is find a substantial question which, if decided favorably to the defendant on appeal, would likely result in reversal or a new trial." *United States v. Tunick*, No. 23-98-CR-1238(SAS), 2001 WL 282698, at *3 (S.D.N.Y. Mar. 22, 2001).

Each of the issues discussed below satisfy the requisite criteria for bail pending appeal, and, indeed, are "so integral to the merits of the conviction on which the defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). Furthermore, while each of the issues below independently would warrant reversal or a new trial, the issues, when considered in combination, provide a compelling case for bail pending appeal. *See, e.g., United States v. Haynes*, 729 F.3d 178, 197 (2d Cir. 2013) ("Individually, these errors may not provide a basis for vacating the defendant's conviction. However, when considered together, in the context of this trial," reversal of the conviction was warranted.).

4

### 1. The Court should have dismissed the Superseding Indictment based on the government's spoliation of evidence.

Mr. Greenberg filed a pretrial motion to dismiss the Superseding Indictment on the grounds that the "government recklessly and in bad faith permitted the computers and computer servers of Classiccloseouts.com . . . to be destroyed, even though the prosecution team was well aware that the forensic copies of that evidence" made by the FTC in a parallel regulatory action were inadequate and incomplete. *See* Dkt. #80. The Court denied Greenberg's motion to dismiss on the papers. *See* Dkt. ##80-83, 88, 94-95). The Court found that Greenberg satisfied two out of the three requirements for establishing spoliation: (i) the "missing computer data contained exculpatory evidence" (11/01/13 Tr. at 13); and (ii) Greenberg was "unavailable to obtain comparable evidence by other reasonably available means." *Id.* at 14. However, the Court found that Greenberg failed to establish the third requirement: that the government acted in bad faith. *Id.* at 15.

The Court erred in failing to find bad faith on the part of the government, or, at a minimum, to order an evidentiary hearing to evaluate whether the government acted in bad faith. Through sworn declarations and documentary evidence submitted by the defense, Greenberg established: (i) the FTC was directed to secure and preserve the computers and servers of Classic Closeouts; (ii) the FTC failed to adequately copy the data on those computers and servers; (iii) the FTC provided the government with deficient forensic copies of the computers and servers that the government knew were deficient; and (iv) although the FTC had possession of the computers and servers, the prosecution team, recklessly (at a minimum), failed to take adequate steps to preserve that evidence. *See* Dkt. #80 at 12. In response, the government, in its papers, relying on unsworn and unsubstantiated factual assertions, contended that the FTC did not have possession of the computers during the relevant time period, and intimated that Greenberg or a

5

nominee of Greenberg's actually had possession of the computers and servers during the relevant time period. *See* Dkt. #88. Greenberg vigorously disputed that contention (*see* Dkt. #94), and provided further evidence supporting his factual allegations (*see* Dkt #95).

Although the Court recognized that with respect to the question of bad faith, there were "factual disputes between the government and the defendant as to who had access and control over the subject computers and servers"—factual disputes central to the question of bad faith— the Court determined, without conducting a hearing or requiring sworn testimony by the government (or even documentary proof supporting the government's factual assertions) that Greenberg "failed to show bad faith on the part of the government" and therefore denied his motion to dismiss on the basis of spoliation of the evidence. *See* 11/01/13 Tr. at 15. Given that only Greenberg provided sworn testimony and documentary evidence in support of his motion, the Court should not have ruled against Greenberg, and at a minimum, should have conducted an evidentiary hearing on the factual disputes concerning bad faith.

### 2. The Court should have dismissed the wire fraud counts of the Superseding Indictment on the grounds that they do not plead a cognizable scheme to defraud under the federal wire fraud statute.

Greenberg filed a pretrial motion to dismiss the wire fraud counts of the Superseding Indictment (Counts 1-8) on the grounds that the alleged victims of the crimes—Classic Closeouts' customers—were not the parties deceived by the fraud and thus failed to satisfy the "convergence" requirement of the federal mail and wire fraud statutes. *See* Dkt. #71. The Superseding Indictment alleged that Greenberg issued charges on customers' credit and debit card accounts without their authorization. *See* Superseding Indictment ¶¶7-8. However, the alleged fraudulent representations underlying the alleged fraud scheme were made not to Classic Closeouts' customers—the *only* alleged victims of the mail fraud (Superseding Indictment ¶14)—but the issuing banks and the credit card processors, who were falsely told that the charges were legitimate. *Id.* ¶9.

6

In these circumstances, the Ninth Circuit has held that such allegations fail to adequately plead fraud for lack of "convergence," *i.e.*, "the intent must be to obtain money or property from the one who is deceived." *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989). Although the Second Circuit has not expressly decided the issue, several district court opinions in this Circuit also have endorsed the convergence theory. *See, e.g., United States v. Regan*, 713 F. Supp. 629, 637 (S.D.N.Y. 1989); *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 925 F. Supp. 162, 164 (S.D.N.Y. 1996). The Second Circuit has also suggested, in *dicta*, that it approves of the convergence theory of federal mail and wire fraud. *See, e.g., United States v. Covino*, 837 F.2d 65, 71 (2d Cir. 1988) ("mail [or wire] fraud requires a finding that the victim be defrauded of money or property"); *Johnson Elec. N.A. Inc. v. Mabuchi Motor America Corp.*, 98 F. Supp. 2d 480, 488 (S.D.N.Y. 2000) ("The Second Circuit, in dicta, has expressed approval of the proposition that the party deceived in a mail [or wire] fraud case must also lose money or property."). *See also, United States v. Eisen*, 974 F.2d 246, 253 (2d Cir. 1992) (stating that the validity of the convergence theory is an open issue in this Circuit). If the wire fraud counts were dismissed, the remaining counts of the indictment, which rely on the underlying wire fraud as alleged in the Superseding Indictment, would be dismissed.

In denying Greenberg's motion to dismiss the wire fraud counts, the Court noted that "the Second Circuit," unlike the Ninth Circuit, "has not adopted a convergence requirement" and pointed to dicta in other opinions suggesting that the convergence theory is invalid. 11/01/13 Tr. at 7. Because we submit that a charge under the wire fraud statute must plead convergence, the Court erred in denying Greenberg's motion to dismiss.

### 3. Trial errors deprived Mr. Greenberg of a fair trial.

Certain errors at trial, including the erroneous admission of improper lay testimony over Greenberg's objection and inappropriate comments by the prosecutor in the government's rebuttal, require reversal and a new trial.

7

### a. The Court erroneously admitted improper opinion testimony by a lay witness that was materially and unfairly prejudicial.

One of the central themes of Greenberg's defense is that the government failed to provide any evidence of how Greenberg could plausibly have caused the unauthorized charges to be made to customer accounts. As an initial matter, there was no forensic analysis establishing Greenberg as the perpetrator of the charges because Classic Closeout's computers and servers were lost. Furthermore, there was no testimony identifying how Greenberg even *could have* caused the mass, unauthorized charges to be made to customers' accounts. In fact, the only evidence at trial concerning how the scheme could have been accomplished suggested that Greenberg *could not have* perpetrated the fraud.

Specifically, in his testimony, Classic Closeouts' programmer, Venkata Chittabithini, described the only way he knew how a Classic Closeouts employee could make an unauthorized charge to a customer's credit card, and the process was time-consuming and inefficient, certainly not the method of how tens of thousands of credit cards got charged. In order to make an unauthorized charge, one would have to go to one customer account page at a time. (Tr. 708-709). And in order to access a customer account page, one would have to generate a report based on identifiable information about specific customers—a process that was slow. (Tr. 709-711). And given Greenberg's lengthy travel, generally to China, Greenberg would have to access the customer account pages remotely, which meant that it would take even longer to process unauthorized transactions. (Tr. 713-716). Thus only proof at trial demonstrated that this method of charging customers—the only known way to have accomplished it—could not have been the method employed by Greenberg. (Tr. 717).

In an effort to remedy this gaping hole in its theory of the case, the government, in its examination of Simcha Geller, Classic Closeouts' bookkeeper and customer service director, elicited the following opinion testimony over the defense's objections:

8

> Q: You are not a programmer, right?
>
> A: I am by trade. I never did it professionally.
>
> Q: Do you know whether a program could be created to do the kind of things that defense counsel just asked you about?
>
> MR. CREIZMAN: Objection.
>
> THE COURT: Overruled.
>
> A: Repeat the question.
>
> Q: Do you know whether a program could be created to do the kind of things that defense counsel just asked you about, where you said to your knowledge it couldn't be done?
>
> A: To the best of my knowledge, such a program can be created.
>
> Q: Can or cannot?
>
> A: Can.
>
> Q: Can, meaning yes?
>
> A: Yes.

(Tr. 562). Geller's opinion testimony should not have been permitted because he was not—and could not have been—qualified as an expert witness, and could not explain how this program could have been created. As such the testimony was improper and lacked foundation. Although the government has argued that the testimony was not improper lay opinion because Geller was qualified to testify about his "knowledge, use and familiarity with the Classic Closeouts website and computers," (Dkt. # 149 at 13), he was not qualified to testify as to whether a computer program *could* be created that would allow Classic Closeouts to cause mass unauthorized charges of customer credit cards. Accordingly, the admission of this improper lay opinion testimony was error. And that error was not harmless because Greenberg's principal defense

9

was that the government failed to establish proof of his participation in the fraud beyond a reasonable doubt because, among other things, the government failed to provide any evidence as to how Greenberg made the unauthorized charges. In attempting to undermine this defense, the government relied on Geller's improper lay opinion testimony.

### b. The prosecutor's comments in summation were improper and caused Greenberg substantial prejudice.

A prosecutor's improper comments during summation are grounds for reversal if they cause the defendant "substantial prejudice." *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991). Here, the prosecutor's comments during summation and rebuttal summation that: (i) Greenberg is the "only liar in the room"; (ii) while the government's witnesses subjected themselves to cross-examination, Greenberg did not; and (iii) the defense attorney's opening statements were "lies." On the basis of these kinds of improper arguments, and the prosecutor's sarcastic laughter on several occasions when describing Greenberg's defense arguments, defense counsel requested a mistrial, which was denied. 1/21/14 Tr. at 1323-1324.

To begin with, although Greenberg did not testify at trial, in its summation and rebuttal summation, the prosecutor repeatedly referred to "lies" Greenberg made in written communications during the alleged fraud, and used the words "lie," "lied," and "lies" approximately 60 times. *See* 1/21/14 Tr. at 1177-1229, 1305-1321. After making all of these references to lying, during his rebuttal summation the prosecutor said the following:

> Ladies and gentlemen, each of those witnesses, they came here they testified under oath. And they were cross-examined. They allowed themselves to be cross-examined. They didn't lie to you. There is only one liar in this courtroom and he is sitting over there."

Tr. 1310.

The prosecutor's statements were highly inflammatory for several reasons: *First*, they constituted improper vouching of the government's witnesses. *Second*, the prosecutor calling Greenberg "the only liar in the room" after repeatedly referring to Greenberg's alleged "lies" was

10

excessive and inflammatory." *See Floyd v. Meachum*, 907 F.2d 347 at 354-355 (2d Cir. 1990) (reversing conviction where, in summation, "the prosecutor used the terms 'liar' or 'lie' over 40 times in characterizing [defendant] Floyd, who did not testify"). *Third*, in violation of Greenberg's Fifth Amendment right not to testify, the government improperly suggested to the jury that it should infer guilt since the government's witnesses, "allowed themselves to be cross-examined," and therefore "didn't lie to you." By implication, Greenberg, who didn't testify, was "the only liar in this courtroom." *See, e.g., United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973) (reversing, in part, because of prosecutor's argument in summation that defendant's "testimony is so riddled with lies it insults the intelligence of 14 intelligent people sitting on the jury").

The prosecutor also repeatedly characterized defense counsel's statements to the jury as lies. For example, the prosecutor said:

> Now you heard the defense present a different story during the opening statement. You heard a variety of claims and excuses for why you should believe that the defendant is innocent. But now you have seen and heard the evidence in this case, and the evidence shows that those claims and excuses, just like what Daniel Greenberg said to Simona Nass, just like what the defendant said to Cynergy, just like what he said to Bruce Sellers, *it is all a bunch of lies*.

Tr. 1214 (emphasis added). Similarly, in referring to defense counsel's opening statement, the prosecutor said, "You heard the excuse that: Well, the business was doing well so Daniel Greenberg wouldn't risk a fraud. And that is a lie." Tr. 1215. Yet another example, in paraphrasing part of defense counsel's opening statement, the prosecutor said:

> The defendant said a lot of things that sound like they are not true but, you know, we know that now and in hindsight, but at the time the defendant was saying them, he could have believed they were true. He had a good faith basis. I think that was the word he used; a good-faith basis; a reasonable belief that what he said was true. You don't need to look further than Exhibits 33 through 36, again, to know that is a complete lie.

Tr. 1221-1222. In similar circumstances, the Second Circuit has reversed convictions. *See, e.g., United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990) (reversing where prosecutor in

rebuttal summation said that defense counsel "will make any argument he can to get that guy off"); *United States v. Gonzalez*, 488 F.2d 833, 836 (2d Cir. 1973) (reversing, in part, because of prosecutor's inflammatory argument in summation that "you have to be born yesterday" to believe the defense, and that the defense is "an insult to your intelligence").

### 4. The Government Failed To Present Sufficient Evidence To The Jury To Permit a Finding Of Guilt Beyond A Reasonable Doubt And, Accordingly, Warrants Reversal Of Mr. Greenberg's Conviction

The Court erred in denying Greenberg's motion for a judgment of acquittal under Fed. R. Crim. P. 29, or, in the alternative for a new trial under Fed. R. Crim. P. 33, for the reasons set forth in Greenberg's opening and reply memoranda of law in support of that motion. *See* Dkt. ## 148, 152.

### CONCLUSION

Because (i) Greenberg is neither a flight risk nor a danger to the community, and (ii) the foregoing issues—both independently and in combination—raise substantial questions which, if decided favorably to Greenberg on appeal, would likely result in reversal or a new trial, we respectfully request that the Court grant Mr. Greenberg's motion for bail pending appeal.

November 7, 2014  /S/ Eric M. Creizman
New York, New York  Eric M. Creizman (EC 7684)

CREIZMAN PLLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com

*Attorneys for Jay Seitz*